**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| AQUILLA W.,<br><br>                    Plaintiff,<br><br>v.<br><br>COMMISSIONER     OF     SOCIAL<br>SECURITY,<br><br><br>                    Defendant. | Civil Action No. 25-13068 (SDW)<br><br><br>**OPINION**<br><br><br>July 24, 2026 |

**WIGENTON**, District Judge.

Before this Court is Plaintiff Aquilla W.'s ("Plaintiff")[1] appeal of the final administrative decision of the Commissioner of Social Security ("Commissioner") with respect to Administrative Law Judge Kenneth Ayers's ("ALJ Ayers") denial of Plaintiff's claims for supplemental security income ("SSI") under the Social Security Act (the "Act"). (D.E. 5-2.) This Court has subject matter jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Venue is proper under 42 U.S.C. § 405(g). This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the Commissioner's decision is **AFFIRMED.**

    **I.**        **FACTUAL BACKGROUND**

---

[1] Plaintiff is identified only by his first name and last initial in this opinion, pursuant to Standing Order 2021-10, issued on October 1, 2021, available at https://www.njd.uscourts.gov/sites/njd/ files/SO21-10.pdf.

Plaintiff was forty-four years old on the date his application was filed, having been born on November 7, 1978, and alleges that he became disabled on February 1, 2018 (the "alleged onset date"). (R. 22, 39.) Plaintiff's disability claim is rooted in a combination of physical impairments (degenerative disc disease of the cervical and lumbar spine and bilateral cubital and carpal tunnel syndrome) and mental impairments, including anxiety disorder, schizoaffective disorder, bipolar type, post-traumatic stress disorder ("PTSD"), and substance abuse disorder.[2] (R. 290, 309–320.)

The record reflects that in November 2018, Plaintiff sought treatment reporting a work-related injury sustained approximately one year earlier, with pain in the left side of his body radiating into his left arm and leg. (R. 416.) Examinations through January 2019 showed painful range of motion in his left shoulder, hip, knee, and spine, though with a normal gait and grossly normal strength. (R. 418, 427, 431, 446, 467, 488, 494, 504, 518, 930–31, 1056, 1158, 1165, 1173, 1179, 1206.) Plaintiff was diagnosed with left carpal tunnel syndrome in November 2021 and a January 2022 nerve conduction study confirmed bilateral cubital tunnel syndrome and carpal tunnel syndrome. (R. 904–05, 1158.) He received orthopedic treatment from February 2022 through May 2023 and neurology treatment from April 2022 through November 2023, with examinations in early and mid-2023 showing giveaway weakness in his left forearm and decreased

---

[2] The record also reflects several non-severe or non-medically determinable conditions not at issue in this appeal. Plaintiff had left hip trochanteric bursitis following an October 2021 fall and intermittent right knee effusion first reported in July 2022, both treated conservatively; at his hearing, Plaintiff testified that his hip issue had resolved and his knee was no longer problematic outside of bending or kneeling. (R. 877–79, 882, 66–67, 498, 500, 529, 532.) Plaintiff has also been diagnosed with mild sleep apnea and mixed hypertriglyceridemia, both treated conservatively. (R. 938, 1168.) Additionally, ALJ Ayers found Plaintiff's alleged seizure disorder, traumatic brain injury, neurocognitive disorder, and chest pain not medically determinable: Plaintiff's sole seizure occurred in 2004, well before the application date, with no recurrence as of an August 2024 visit. (R. 396, 992–93, 1127.) The record did not corroborate an alleged 2018 traumatic brain injury in contemporaneous treatment notes. (R. 416, 425, 429.) No cognitive testing predated Plaintiff's workplace injury to support a neurocognitive disorder diagnosis and October 2023 cardiac testing following reported chest pain was normal. (R. 998–1002, 1168.)

grip strength and finger movement bilaterally, treated conservatively with nerve-pain medication and antidepressants. (R. 867–922, 932–39, 1123, 1129.)

On October 11, 2023, Plaintiff underwent a consultative neurological examination with Rachel Potashnik, M.D. (R. 992–97.) Although the exam revealed bilateral knee swelling, a fused left fourth digit, and several positive or equivocal provocative findings in his upper extremities, Plaintiff demonstrated the ability to tandem walk and walk on his heels and toes, with normal tone, range of motion, and strength in his upper and lower extremities and functional range of motion in his spine. (*Id.*) Consultative x-rays showed mild multilevel degenerative disc disease in the cervical spine and mild posterior facet hypertrophy in the lumbar spine, without compression fracture or spondylolisthesis. (*Id.*)

As to his mental health, Plaintiff has received outpatient treatment for bipolar disorder, anxiety, PTSD, and alcohol and cannabis abuse disorder at Rutgers University Behavioral Healthcare since September 2022 and separately received treatment and psychotropic medication management for schizoaffective disorder, bipolar type, and PTSD at Mindful Cognition from April through October 2023, reporting trouble sleeping, nightmares, racing thoughts, irritability, paranoia, and hallucinations. (R. 387–88, 483, 948–991, 1081–1121.) Mental status examinations spanning April 2023 through September 2024 were inconsistent, at times reflecting an anxious or depressed mood, irritable behavior, pressured speech, flight of ideas, and auditory hallucinations, and at other times reflecting a calm, cooperative presentation with logical thought process, normal memory, normal attention and concentration, and good insight and judgment. (R. 952, 958, 962, 966, 981, 985, 991, 1094–95, 1103, 1106, 1110, 1112.)

At the Agency's request, Plaintiff underwent a consultative psychological examination with Robert Rekker, Psy.D., on November 1, 2023. (R. 998–1002.) He reported significant mood

swings, sadness, intrusive negative thoughts, paranoia, prior trauma, nightmares, self-isolation, and difficulty with memory and concentration. (*Id.*) On examination, he had adequate hygiene, good eye contact, and normal speech; he demonstrated intact immediate memory (three of three items) but slightly impaired delayed recall (two of three items), and impaired attention and concentration, correctly performing simple calculations but unable to complete serial-seven subtraction or spell "world" backward. (*Id.*) Dr. Rekker diagnosed schizoaffective disorder, bipolar type, PTSD, generalized anxiety disorder, mild neurocognitive disorder due to head trauma, and hallucinogen use disorder in partial remission. (*Id.*)

Plaintiff's self-reported substance use fluctuated over the following months: he reported occasional alcohol and ecstasy use with continued marijuana use in January 2024, approximately three weeks of alcohol sobriety by February 2024, drinking beer two to three times weekly by July 2024, and drinking on multiple days along with two reported ecstasy uses by September 2024. (R. 1086–87, 1097, 1100, 1103–04, 1107, 1110, 1112.) During an August 2024 visit with treating neurologist Khalid Tabbarah, M.D., Plaintiff reported worsening nightmares, difficulty focusing due to poor sleep, memory issues, hallucinations, and increased irritability, though mental status testing that day showed intact immediate memory, only slightly impaired delayed recall, intact attention and concentration, and a normal fund of knowledge. (R. 1127–28.)

Plaintiff's function report reflects that he is limited in his ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, and use his hands; that he has difficulty getting along with others and authority figures due to his mental health conditions; and that he does not handle stress or changes in routine well, though he reported the ability to manage his own funds, prepare simple meals, perform light household chores, shop in stores, and drive. (R. 311–316.) Plaintiff's partner submitted a third-party function report reflecting similar limitations. (R. 321–330.)

4

## II.    PROCEDURAL HISTORY

### A. Initial Application and Administrative Hearing

On May 17, 2023, Plaintiff protectively filed an application for SSI, alleging disability beginning February 1, 2018.[3] (R. 22, 39.) The claim was denied initially on November 6, 2023, and upon reconsideration on February 6, 2024. (R. 22.) Plaintiff filed a written request for a hearing on March 26, 2024, and ALJ Ayers held a video hearing on October 15, 2024. (*Id.*) Plaintiff was represented by counsel at the hearing.[4] (*Id.*; R. 47.). ALJ Ayers also heard testimony from impartial vocational expert Steven Feinstein ("VE Feinstein"). (R. 22; R. 47.)

Plaintiff had previously filed a Title XVI application, which was denied on August 24, 2021. (R. 22.) Because the instant application was filed less than two years later, ALJ Ayers construed it as an implied request to reopen the prior application but found no good cause to reopen under 20 C.F.R. §§ 416.1488, 416.1489, and that Social Security Ruling ("SSR") 91-5p did not apply; the prior determination was therefore treated as final and binding. (*Id.*)

At the hearing, Plaintiff testified that he suffers from a nerve disorder extending from his left shoulder into his fingers and bilateral carpal tunnel syndrome, for which he was referred for surgery on his left wrist and hand, describing constant pain throughout his left shoulder and arm that causes him to intermittently drop items and that he attributed to a 2018 work-related injury. (R. 63–65, 68.) He testified to constant lower back pain, estimating he could lift approximately five pounds with his left arm as against a full gallon of milk with his stronger right arm, and

---

[3] Plaintiff previously applied for and was denied disability benefits in final agency decisions dated June 9, 2020, and December 28, 2022. (R. 79–119.)

[4] The ALJ'S written decision reflects that Lori Esta Lembeck, a non-attorney representative, represented Plaintiff. (R. 22.) However, the October 15, 2024 hearing transcript indicates Plaintiff's attorney, Gary Pernice, represented Plaintiff at the hearing. (R. 47.)

described his ability to sit or stand for only fifteen to twenty minutes at a time and walk approximately two blocks.  (R. 67, 69, 71–72.)

As to his mental health, Plaintiff testified that he receives outpatient treatment and psychotropic medication at Rutgers Behavioral Healthcare, and described nightmares, racing thoughts, paranoia limiting his ability to go certain places, and difficulty concentrating requiring reminders and repetition.  (R. 54–63.)  He testified that his paranoia limits his social life and that he mainly keeps to himself, though he is able to prepare simple meals, perform light household chores, shop in person, and drive to his mother's house several times weekly.  (R. 61–62, 66.)  He also testified regarding his substance use, including periods of sobriety interrupted by relapses tied to his depression.  (R. 70–71.)

At the close of Plaintiff's testimony, ALJ Ayers confirmed with Plaintiff that he is right-handed before turning to VE Feinstein.  (R. 73.)  ALJ Ayers presented VE Feinstein with a hypothetical individual of Plaintiff's age, education, and work experience, limited to light work with the postural, manipulative, and mental limitations ultimately reflected in the RFC.  (R. 75.) VE Feinstein testified that such an individual could perform the requirements of representative occupations including office helper, marker (retail trades), and photocopy machine operator, existing in significant numbers in the national economy.  (R. 75.)  On further questioning by Plaintiff's counsel incorporating additional limitations reflected in a treating source's opinion, including moderate-to-marked difficulty maintaining attention and concentration, being off-task fifteen percent of the workday, and two absences monthly, the vocational expert testified that no jobs would remain available.  (R. 76.)

**B.  ALJ Ayers's Decision**

On October 28, 2024, ALJ Ayers issued a written decision concluding Plaintiff was not disabled under the Act since May 17, 2023.  (R. 40.)  To determine whether Plaintiff was disabled, ALJ Ayers considered the five-step sequential evaluation process. At step one, ALJ Ayers concluded that Plaintiff had not engaged in substantial gainful activity since the application date. (R. 38.)

At step two, ALJ Ayers found that Plaintiff's degenerative disc disease of the cervical and lumbar spine, bilateral cubital tunnel syndrome, bilateral carpal tunnel syndrome, anxiety disorder, schizoaffective disorder, bipolar type, PTSD, and substance abuse disorder were severe impairments that significantly limit Plaintiff's ability to perform basic work activities.  (R. 25; SSR 85-28.)  Plaintiff's left hip trochanteric bursitis, sleep apnea, right knee effusion, and mixed hypertriglyceridemia were found non-severe, as none produced any residual functional limitation reflected in the record.  (R. 25–26.)  Plaintiff's alleged seizure disorder, traumatic brain injury, neurocognitive disorder, and chest pain were found not medically determinable, for lack of objective supporting evidence.  (R. 26.)

At step three, ALJ Ayers concluded Plaintiff's impairments, individually or in combination, did not meet or medically equal the severity of those listed in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Appendix").  (R. 26–28.)  Plaintiff's spine and upper-extremity impairments did not satisfy Listings 1.15, 1.16, or 1.18, as the record did not establish a documented need for an assistive device or any impairment of Plaintiff's ability to perform fine and gross movements.  (R. 26.)  As to Plaintiff's mental impairments, ALJ Ayers examined each of the four broad areas of mental functioning and found moderate limitation in each, (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself.  (R. 26–28.)

7

ALJ Ayers concluded the "paragraph B" criteria were not satisfied because Plaintiff's limitations did not rise to one extreme or two marked limitations. (R. 28.) ALJ Ayers similarly found the "paragraph C" criteria unsatisfied, noting Plaintiff's mental health treatment had remained conservative and outpatient throughout, without any inpatient admissions. (*Id.*)

As to Plaintiff's RFC, ALJ Ayers determined Plaintiff can perform light work with some limitations, including occasional crawling and no climbing of ladders, ropes, or scaffolds; frequent reaching in all directions with the left upper extremity and frequent bilateral fingering and handling; and simple work with occasional changes in a routine work setting, no production-rate pace requirements, and occasional interaction with supervisors, coworkers, and the public. (R. 28–39.) ALJ Ayers found Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, but that Plaintiff's statements concerning their intensity, persistence, and limiting effects were not entirely consistent with the record. (R. 28–30.) ALJ Ayers's decision discussed Plaintiff's medical records at length, explaining which medical opinions, including those of the state agency consultants, Plaintiff's treating providers, and the consultative examiners, he found persuasive or unpersuasive, and why. (R. 30–39.)

At step four, ALJ Ayers concluded Plaintiff has no past relevant work.[5] (R. 39.) Considering Plaintiff's age, education, work experience, and RFC, ALJ Ayers also concluded at step five that Plaintiff could perform jobs existing in significant numbers in the national economy, crediting the vocational expert's testimony that Plaintiff could work as an office helper, marker (retail trades), or photocopy machine operator. (R. 39–40.) Thus, ALJ Ayers concluded Plaintiff was not disabled under the Act since May 17, 2023. (R. 40.)

---

[5] While the record reflects Plaintiff did have work previously as an electrician, steel laborer, and sales associate, since these positions were over five years ago, it was determined Plaintiff had no prior work experience for purposes of this application. 20 C.F.R. § 416.960(b)(1)(i).

### III.    LEGAL STANDARD

#### A.  Standard of Review

When reviewing applications for Social Security disability benefits, this Court exercises plenary review of legal issues decided by the ALJ and upholds factual findings if supported by substantial evidence. *Zaborowski v. Comm'r of Soc. Sec.*, 115 F.4th 637, 639 (3d Cir. 2024); 42 U.S.C. § 1383(c)(3); 42 U.S.C. § 405 (g) ("The findings of the Commissioner ... as to any fact, if supported by substantial evidence, shall be conclusive."). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consolidated Edison Co. of N.Y. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Under the substantial evidence standard, the threshold for evidentiary sufficiency is not high. *Id.* An ALJ's decision cannot be set aside merely because this Court "acting *de novo* might have reached a different conclusion." *Hunter Douglas, Inc. v. N.L.R.B.*, 804 F.2d 808, 812 (3d Cir. 1986). So long as the ALJ's decision sufficiently develops the record and explains its findings to permit meaningful review, the ALJ need not "use particular language or adhere to a particular format" when conducting the analysis. *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004).

#### B.  The Five-Step Disability Test

To make a disability determination, the ALJ follows a five-step, sequential analysis.  20 C.F.R. § 416.920(a); *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 201–03 (3d Cir. 2019).  The ALJ determines whether the claimant:  first, is currently engaged in substantial gainful activity ("SGA"); second, has a "severe" and "medically determinable" impairment; and third, has an impairment, or combination thereof, that is equal to or exceeds one of those included in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Appendix").  20 C.F.R. §§

416.920(a)(4)(i)–(iii).  Prior to reaching the fourth step, the ALJ considers the claimant's residual functional capacity, which is "the most [the claimant] can still do despite [his or her] limitations," as it relates to meeting "the physical, mental, sensory, and other requirements of work.  *Id.* §§ (a)(4)(iv), 416.945(a)(4).  Then, at step four, the ALJ determines whether the claimant can still do his or her past relevant work by comparing his or her RFC to the "physical and mental demands" of that work.[6]  *Id.* §§ (a)(4)(iv), (f).  Lastly, at step five the ALJ decides whether the claimant "can make an adjustment to other work" considering his or her RFC, age, education, and work experience. *Id.* § (a)(4)(v).  The claimant bears the burden of proof at all steps except step five, where the burden is on the Commissioner.  *Hess*, 931 F.3d at 201.

## IV.    DISCUSSION

On appeal, Plaintiff seeks reversal or remand of the Commissioner's decision.  (D.E. 10 ("Mov. Br.") at 31.)  Plaintiff contends that the ALJ erred by failing to properly evaluate the medical opinions regarding his mental limitations and Plaintiff's subjective complaints.  (Mov. Br. at 18–31.)

First, Plaintiff's contention that ALJ Ayers failed to properly evaluate the medical opinions provided by Plaintiff's treating specialists is unpersuasive.  Plaintiff asserts that the ALJ erred by ignoring the explanations provided by his treating mental health experts and reaching conclusions that were inconsistent with Plaintiff's treatment records.  To this extent, this Court notes that Plaintiff's arguments amount to a request to reweigh the evidence and review the Commissioner's findings and decision de novo.  However, this Court's review of the ALJ decision is "quite limited." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005).  Despite Plaintiff's assertions that the ALJ failed to properly evaluate the evidence, this Court's role is not to re-weigh the

---

[6] Past relevant work is work performed by the claimant "within the past five years that was substantial gainful activity and that lasted long enough" for the claimant to learn to do it.  20 C.F.R. § 416.960(b)(1)(i).

evidence.  *See Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011) ("Courts are not permitted to re-weigh the evidence or impose their own factual determinations."); *see also Michael Edward Davern v. Comm'r of Soc. Sec.*, 660 F. App'x 169, 174 (3d Cir. 2016) ("A court may not weigh the evidence or substitute its own findings for the Commissioner's.").  The question before this Court is whether ALJ Ayers's decision was supported by substantial evidence.

Upon review, ALJ Ayers's consideration of the medical opinions was supported by substantial evidence.  For claims, such as Plaintiff's, filed after March 27, 2017, "the Commissioner's regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources." *Daisy P. v. O'Malley*, Civ. A. No. 22-1391, 2024 WL 1173043, at *10 (D.N.J. Mar. 19, 2024).  "[T]he Commissioner must consider all medical opinions and 'evaluate their persuasiveness' based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and 'other factors.' " *Bruce T. v. Kijakazi*, No. 21-20289, 2022 WL 10025372, at *2 (D.N.J. Oct. 17, 2022) (quoting 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c)).  When determining the persuasiveness of a medical opinion, "[s]upportability and consistency are the most important factors.... ALJs need not explain their determinations regarding the other factors, but they must discuss supportability and consistency." *Yury R. v. Dudek*, No. 22-5048, 2025 WL 684849, at *8 (D.N.J. Mar. 4, 2025) (quoting *Gongon v. Kijakazi*, 676 F. Supp. 3d 383, 394 (E.D. Pa. 2023)).

When giving this explanation, the ALJ "need not reiterate the magic words 'support' and 'consistent' for each doctor." *Zaborowski v. Comm'r of Soc. Sec.*, 115 F.4th 637, 639 (3d Cir. 2024).  It is sufficient, rather, for the ALJ to "weave supportability and consistency throughout her analysis of which doctors were persuasive." *Id.*  Furthermore, "the ALJ is not required to supply

11

a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981).

Here, the ALJ evaluated the various medical opinions and prior administrative medical findings of record and provided an explanation of why some opinions were more persuasive than others. The ALJ examined the opinions of Plaintiff's treating providers and articulated why some of the opinions were inconsistent with Plaintiff's treatment records or were speculative. (R. 30–39.) For instance, ALJ Ayers explained that Marcel Kaganovskaya, N.P.'s opinion was unpersuasive because the degrees of limitations were inconsistent with Plaintiff's treatment records, which showed generally adequate functioning. (R. 36.) The ALJ further explained that the opinion of Stuart Belenker, M.D., Plaintiff's treating psychiatrist, was speculative and inconsistent with Plaintiff's treatment record showing that Plaintiff generally functioned adequately. (R. 37–38.) ALJ Ayers also determined that Dr. Tabbarah's opinion was partially persuasive but speculative when discussing Plaintiff's absenteeism. (R. 36–37.) Thus, before coming to his conclusion, ALJ Ayers considered both evidence favoring and disfavoring Plaintiff, and sufficiently addressed supportability and consistency when determining the opinions' persuasiveness. Therefore, the Court finds no error in ALJ Ayers's evaluation of the medical opinions.

Next, Plaintiff contends that the ALJ failed to properly evaluate his subjective complaints. An ALJ may discount a claimant's subjective complaints if they are inconsistent with the evidence of record. 20 CFR § 404.1529(a); *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 433 (3d Cir. 1999). Therefore, an ALJ will consider a claimant's statements about the intensity, persistence, and limiting effects of symptoms, but will evaluate those statements "in relation to the objective medical evidence and other evidence," in reaching a conclusion as to whether a claimant is

12

disabled. 20 CFR § 404.1529(c)(4).  Here, after carefully considering the evidence, the ALJ concluded Plaintiff's "medically determinable impairments could reasonably be expected to cause symptoms; however, the [Plaintiff's] statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (R. 30.) The ALJ relied on aspects of the record that contradicted Plaintiff's subjective testimony, such as treatment notes that failed to show the serious symptoms and dysfunction alleged by Plaintiff; in addition to mental status examinations that demonstrated that Plaintiff had intact immediate memory and intact attention and concentration. (R. 30–39.)  This Court finds ALJ Ayers's explanation for not crediting aspects of Plaintiff's subjective testimony was sufficient, especially given the deference this Court must give the ALJ's credibility determinations. *See Hoyman v. Colvin*, 606 F. App'x 678, 681 (3d Cir. 2015) ("The credibility determinations of an administrative judge are virtually unreviewable on appeal." (quoting *Bieber v. Dep't of the Army*, 287 F.3d 1358, 1364 (Fed. Cir. 2002))).  Therefore, ALJ Ayers provided an adequate rationale regarding the persuasiveness of the medical evidence and a specific explanation as to why he discounted Plaintiff's subjective complaints.

## V.    CONCLUSION

For the reasons stated above, the Commissioner's decision is **AFFIRMED.**    An appropriate order follows.

/s/ Susan D. Wigenton<br>
**SUSAN D. WIGENTON, U.S.D.J.**

Orig:  Clerk
cc:      Parties

13